■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v WILLIAM RHODES, Appellant. — Judgment unanimously affirmed. Memorandum: Defendant appeals from his convictions of two counts of murder, second degree, and one count each of promoting prostitution, second degree, and assault, third degree. A principal factual issue was defendant's responsibility under section 20.00 of the Penal Law for intentionally aiding one Walter Taylor in the "trial," "conviction," and "death sentence" of Marie Schneeberger for violating his instructions as a prostitute and in causing her death in executing the "sentence" by means of electrocution and/or evisceration. On review of the record, viewing the evidence in the light most favorable to the People (see *People v Kennedy,* 47 NY2d 196, 203), we conclude that the verdict is fully supported by the evidence. We find no reversible error in Trial Term's denial without a hearing of defendant's application made six weeks after the trial to set aside the verdict on the ground of juror misconduct pursuant to CPL 330.30 (subd 2). In support of the motion, defendant introduced a written unsigned statement and a sworn oral "deposition" of Simy Bakker, a volunteer with the jail ministry, who had become acquainted with defendant during trial. She stated that on May 15, 1980, on the third day of testimony, she was present in the courtroom for a few hours and while waiting in the hallway "to wish [defense counsel] luck," she overheard one juror state to another: "Rhodes is guilty, anyone who had anything to do with the murder is guilty." She described both jurors but was not positive where they sat in the jury box. Although she said that she was "shocked" when she heard the comment, she said nothing to defense counsel when she spoke to him immediately thereafter. Nor did she mention the incident to defendant whom she visited in jail two days later. She said nothing about it until she contacted defense counsel over a month later after returning from Europe and after learning that defendant, whom she "believed with all [her] heart * * * could not kill anybody," had been convicted. The cases relied on by defendant for the proposition that a hearing was mandated, principally, *People v Durling* (303 NY 382) and *People v Gordon* (77 AD2d 662) are distinguishable. *Durling* involved discussion of the case by the jury in public before it was submitted to the jury and communications between prosecution witnesses and jurors through the open windows of the jury room during deliberations. *Gordon* concerned not a posttrial motion but a mistrial motion, denied during trial without a hearing, based on a juror's in-court statement which suggested that the jury had deliberated prematurely. Here, by contrast, we have only evidence of an isolated incident involving a private comment of one juror to another. Nor does the comment of the juror, if accepted at face value, show any pre-existing bias which, had it come to light, would have provided a basis for a challenge for cause (cf. *People v Leonti,* 262 NY 256; *People v Harding,* 44 AD2d 800). Rather, the comment, although concededly

contrary to the court's instructions, appears to be no more than an expression of a juror's immediate reaction to the testimonial description by the medical examiner of the victim's eviscerated, disfigured and partially dismembered remains and to testimony concerning various exhibits including a joker playing card found wedged in the victim's mouth. To prevail defendant must not only prove misconduct by a preponderance of the evidence (CPL 330.40, subd 2, par [g]) but he must also show that it created a "'substantial risk of prejudice'" (*Snediker v County of Orange,* 58 NY2d 647, 649, citing *People v Brown,* 48 NY2d 388, 394). The evidence defendant presented to the court was not sufficient to meet this burden. The motion was "based on little more than speculation as to the possibility of prejudice" (*Snediker v County of Orange, supra,* p 649); thus, the court's denial of the motion without a hearing was a proper exercise of discretion (see *Snediker v County of Orange, supra; People v Holmes,* 72 AD2d 1, 6). We fail to see how defendant could proceed by way of additional affidavits or in a hearing to inquire as to what, if any, effect the comment may have had on the minds of the jury without running afoul of the established rule that "'jurors may not impeach their own duly rendered verdict by statements or testimony averring their own misconduct within or without the juryroom'" (*People v De Lucia,* 20 NY2d 275, 276-277; see *People v Sprague,* 217 NY 373, 381). The narrow exception to the rule against impeachment in cases involving an "'outside influence'" (*Parker v Gladden,* 385 US 363, 364; see *People v Brown, supra; People v De Lucia, supra; People v Durling, supra; People v Huntley,* 87 AD2d 488) does not apply here. In view of the overwhelming evidence of guilt and the fact that Richardson's testimony essentially duplicated that of another witness, we find no "significant probability" (*People v Crimmins,* 36 NY2d 230, 242) that the error in precluding cross-examination of prosecution witness Darlene Richardson concerning whether she was instructed by her pimp, a friend of Taylor's to blame everything on defendant, contributed to the verdict. We have examined the other points raised on appeal and find no reversible error. (Appeal from judgment of Monroe County Court, Celli, J. — murder, second degree, and other charges.) Present — Hancock, Jr., J. P., Doerr, Denman, Boomer and Schnepp, JJ.