**The PEOPLE of the State of Colorado In the Interest of E.S., a minor child, El Paso County Department of Social Services, Petitioner-Appellee,**

**and concerning: B.S., Respondent-Appellant.**

No. 83CA0494.

Colorado Court of Appeals, Div. IV.

April 5, 1984.

John N. Franklin, County Atty., Colorado Springs, for petitioner-appellee.

Barney Iuppa, Colorado Springs, for respondent-appellant.

ENOCH, Chief Judge.

B.S., parent, appeals the trial court's judgment entered on a jury verdict that child, E.S., was dependent or neglected. We reverse.

Parent was under the medical care of her family doctor during her pregnancy, delivery, and care of the child until this action was instituted. The child was born on July 15, 1981. Four days after birth, child was hospitalized and tested for a bilirubin problem which had been observed at birth. In August, because the child had a high fever, parent returned her to the hospital, where she was readmitted for treatment of sepsis.

After the sepsis was eliminated and the child discharged, parent continued to take her to the doctor for regular checkups. The child had continued problems of vomiting and constipation or diarrhea, which were made known to the doctor. Parent was counseled as to preparation of the child's prescribed formula, which was not lactose free, and the proper feeding schedule. There is no evidence that parent did not follow these medical instructions.

However, the child was slow to progress in terms of height and weight, and in December 1981, was hospitalized again. A second doctor was asked by the family doctor to assist in the testing, diagnosis, and treatment. The final diagnosis was that the child had a lactose intolerance, and because her growth and development were below chart norms, she was diagnosed as having a "failure to thrive" syndrome. The child was then placed on a lactose-free formula, removed from parent's custody, and placed in foster care. This petition of dependency and neglect was then filed.

## I.

Parent first contends that the court erred by refusing to give an instruction on her "theory of the case." We agree.

In order to meet its burden of proof, the People presented evidence to support their theory that the child had "failed to thrive" because of deprivation of parental love, care, and affection. They argued that the child was lacking proper parental care either as a result of the parent's acts or omissions, or through no fault of the parent.

Parent's theory of the case, although inartfully stated in her refused tendered instruction, was that the child's "failure to thrive," if any, was a result of the lactose intolerance, that this condition was not known to parent, and was not diagnosed until after the child was removed from her care. Thus, the failure to thrive was not because the child lacked proper parental care.

A party is entitled to a "theory of the case" instruction if there is sufficient evidence supporting the theory and if the theory is consistent with existing law. *Federal Insurance Co. v. Public Service Co.*, 194 Colo. 107, 570 P.2d 239 (1977).

Here, the record reveals that the People's expert witness testified that "failure to thrive" can result from pre-natal

damage to the fetus, dwarfism, or malnutrition. The expert further testified that malnutrition can arise in at least three different situations:

(1) if the child is not fed,

(2) if the child cannot digest and absorb the necessary calories from the food provided because of a physical defect, or

(3) if the child cannot digest and absorb the necessary calories from the food provided because of parental deprivation of love and affection.

There was evidence that the child's "failure to thrive" could have been caused by the child's lactose intolerance, a physical defect which causes malabsorption of food resulting in malnutrition. The child was never in the custody of parent after the lactose problem was correctly diagnosed. Hence, evidence supporting parent's "theory of the case" was present.

An instruction regarding the child's lactose intolerance causing a "failure to thrive" should have been given in this case because it is consistent with existing law for the parent to show that the "failure to thrive" was caused by a physical defect and not by parental deprivation. Therefore, refusal of parent's requested instruction was reversible error.

## II.

■ Contrary to parent's contention, the proper standard of proof in a dependency or neglect proceeding is by a preponderance of the evidence, not by clear and convincing evidence. *People in Interest of A.M.D.*, 648 P.2d 625 (Colo.1982), is dispositive.

## III.

■ The parent's final contention is that the court erred when, without notifying counsel, it denied the jury's request for graph paper, but subsequently granted their request for a legal pad. Although this contention is essentially made moot by

our ruling in Part I above, we note that it is without merit.

C.R.C.P. 47(n) requires that any additional instructions to a jury be given in open court in the presence of or after notice to the parties. The rule is not intended to reach or embrace other communications which could not be construed as instructions as to the law in the case and which are manifestly harmless in their character. *Tilley v. Monteluis Piano Co.*, 15 Colo. App. 204, 61 P. 483 (1900).

■ Here, the act of denying a request for graph paper and granting the request for a legal pad were not communications that can be construed as instructions as to the law, and are not the type of actions prohibited by C.R.C.P. 47(n). Therefore, the court did not err.

The judgment is reversed and the cause is remanded for a new trial with directions that the jury be instructed consistent with the views expressed herein.

HODGES * and SILVERSTEIN *, JJ., concur.

---

* Sitting by assignment of the Chief Justice under provisions of the *Colo. Const.*, Art. VI, Sec. 5(3),

and § 24–51–607(5), C.R.S. (1982 Repl.Vol. 10).